```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, et al  . CIVIL ACTION NO. 07-10248-PBS
    Plaintiffs                   .
                                 .
    V.                           . BOSTON, MASSACHUSETTS
                                 . JULY 29, 2008
BOEHRINGER INGELHEIM CORP., et al.
    Defendants                   .
 . . . . . . . . . . . . . . . . .

              TRANSCRIPT OF MOTION HEARING
         BEFORE THE HONORABLE MARIANNE B. BOWLER
             UNITED STATES MAGISTRATE JUDGE

 APPEARANCES:

For the plaintiff:  Barbara Healy Smith, Esquire,
James J. Fauci, Esquire, U.S. Attorney's Office, Suite
9200, Boston, MA  02210, 617-748-3100,
barbara.h.smith@usdoj.gov.

For Ven-A-Care of the Florida Keys, Inc.:  Roslyn G.
Pollack, Esquire, Berger & Montague, PC, 1622 Locust
Street, Philadelphia, PA  19103, 215-875-3000,
rpollack@bm.net.

For Boehringer Ingelheim Corp.:  Eric Gortner, Esquire,
Kirkland & Ellis, LLP, 200 East Randolph Drive, Suite
7400, Chicago, IL  60601, 312-861-2285,
egortner@kirkland.com.




 Court Reporter:

 Proceedings recorded by digital sound recording,
 transcript produced by transcription service.


                       MARYANN V. YOUNG
                   Certified Court Transcriber
                      Wrentham, MA  02093
                        (508) 384-2003
```

2

1    **I N D E X**

2    Proceedings                                              3

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

1  P R O C E E D I N G S

2       COURT CALLED INTO SESSION

3           THE CLERK:  The Honorable Marianne B. Bowler

4  presiding.  Today is July 29, 2008.  The case of United States,

5  et al v. Boehringer Ingelheim, Civil Action No. 07-10248 will

6  now be heard.  Would counsel please identify themselves for the

7  record?

8           MR. GORTNER:  Good afternoon, Your Honor, Eric

9  Gortner from Kirkland & Ellis for Roxane Laboratories, the

10 defendant and the movant here.

11          MS. SMITH:  Barbara Healy Smith from the U.S.

12 Attorney's Office for the United States and with me is Jeff

13 Fauci also from my office for the United States.

14          MS. POLLACK:  Roslyn G. Pollack, Berger Montague, for

15 the relator Ven-A-Care.

16          THE COURT:  Thank you very much.  Well, we're here

17 for a hearing on Docket Entry No. 57, so I'll hear you.

18          MR. GORTNER:  Well, Your Honor, Roxane's motion goes

19 to the written disclosure statement.  As Your Honor knows

20 pursuant to the False Claims Act the relator is required to

21 serve on the government when it files its initial qui tam

22 action a written disclosure statement of, it will include

23 substantially all the information and material evidence that

24 the relator has compiled as to the defendants in the complaint.

25 In April 2000 the relator filed an initial qui tam complaint in

4

1  this district against Roxane Laboratories and certain other
2  defendants and then amended its complaint up through 2005.  And
3  I understand that at each amendment it supplemented or amended
4  its disclosure statement with initial evidence.
5       What we're seeking here, Your Honor, is two different
6  classes of documents.  The first class of documents is, we
7  believe that relator not only included a written disclosure
8  statement which often is a description of the factual basis of
9  the complaint, but also a series of exhibits are attached to
10 the disclosure statement, and we believe that these exhibits
11 are things like advertisement for Roxane's products, pricing
12 information pertaining to Roxane; essentially the information
13 that the relator had compiled factually about Roxane.  As we
14 indicated in our briefs we believe the case law is uniform that
15 the exhibits certainly that are attached to the disclosure
16 statement are not privileged.  In fact, the plaintiffs are not
17 claiming a privilege as to any of those documents.  There is no
18 privilege analysis.  They are plainly discoverable under the
19 case law.  The dispute that we're having on this set of
20 documents is whether the plaintiffs are required to identify
21 what those exhibits were.  They appear to claim in their briefs
22 that they have in fact produced all those documents, but
23 they've produced them in a manner where they're just scattered
24 among I think thousands, maybe even hundreds of thousands of
25 documents that they've produced.  We--

5

1          THE COURT:  How many documents total?

2          MS. POLLACK:  Have we produced?  Your Honor, it's in
3 the thousands.  I'm not sure of the precise number.

4          THE COURT:  All right.

5          MR. GORTNER:  The volume of exhibits, because there
6 are multiple defendants in this qui tam complaint, the volume
7 of documents that went to Roxane are likely to be, I don't
8 think they're voluminous but we just have no way of identifying
9 them.  And as we mentioned in our briefs and as the case law
10 repeatedly mentions, the reason why this is very important is
11 because there are these core jurisdictional defenses that the
12 Court has to consider and that we're entitled to bring forth
13 about whether the relator here in fact was an original source.

14          What's unusual about the case against Roxane is that
15 it was filed a little over five years after the initial qui
16 tams were filed against other defendants in Florida and then
17 found their way up to your courtroom and Judge Saris'
18 courtroom.  And in that intervening period of time there were
19 all kinds of investigative reports, congressional hearings, so
20 forth.  So we certainly believe we have at least a colorable
21 original source defense.  And as the Rockwell decision, which
22 again a district court and made its way up to the Supreme
23 Court, the entire disclosure statement was a joint exhibit
24 submitted by both the government and the defendant.  It was
25 before the Court.  It's referenced in the Rockwell Supreme

6

1   Court decision and the underlying district court said there is
2   no better document out there for you to do your original source
3   discovery, i.e. what the relator knew about your company and
4   when it knew it and what it told the government, then through
5   the disclosure statement which are facts that have to be proved
6   in this case anyway.  There's nothing secretive about these
7   facts.  So we certainly think the exhibits should be produced
8   and they shouldn't be shuffled in a way that essentially would
9   nullify, the case law dictates that we're entitled to get
10  discovery on these issues.
11          The second section of documents is within the actual
12  written disclosure statement itself, Your Honor.  We believe
13  that simple statements about facts in the actual disclosure
14  statement, things like in 1996 Roxane's price for – (inaudible
15  – #12:35:10) bromide was this while their AWP was that.  Those
16  kind of statements, again, are not privileged and protected
17  information and I've cited in multiple cases in our briefs
18  holding that.  We should be entitled to at least a redacted
19  version of the disclosure statement.  We're not looking for the
20  legal opinions of relator's counsel, the legal theories even
21  though we think they're very clear what they are in this case,
22  we're not looking for that information.  But the facts, simply
23  the facts about Roxane in the disclosure statement should be
24  produced pursuant to the case law.
25          To the extent that plaintiffs are contending that

7

1  even just those fact recitations are privileged attorney work
2  product, well, Your Honor, they have the burden of establishing
3  that privilege.  They can't, we believe, just simply say it's
4  privileged.  They, at a minimum the case law instructs that
5  they should submit the disclosure statement, which again is not
6  a voluminous document as I understand it, for in-camera
7  inspection for whether the Court agrees whether those factual
8  statements are in fact protected attorney opinion work product
9  or whether Roxane somehow was unable to establish the
10 requirements of Rule 26(b)(3) which are undue hardship of
11 substantial need.  Which again, the Rockwell decision of the
12 district court plainly said that the ability to mount an
13 original source defense and get this discovery does meet the
14 requirements of Rule 26(b)(3).
15         One additional point, Your Honor, plaintiffs also
16 contend that depositions should be an adequate proxy.  Beyond
17 the fact that we've cited a case like McDonald Douglas which
18 says, no, that's not an accurate proxy because you can't
19 control the witness if he can't refresh recollection.  I
20 deposed one of Ven-A-Care's principles late last week and I
21 actually have a partial transcript, I apologize I wasn't able
22 to file it with the Court but I brought copies for us, where I
23 asked Dr. Lockwood, one of their principles, about the contents
24 of the disclosure statement, just what facts they disclosed to
25 the government about Roxane.  And not surprisingly Dr. Lockwood

1  responded that he had no recollection.  He couldn't identify
2  any of the specific facts, if any, that the relator disclosed
3  in their disclosure statement or their amendments because it
4  was, the initial one was served eight years ago and the
5  subsequent ones have showed up over the years, there were
6  multiple defendants.  So I've tried even in a deposition to get
7  this information and I'm not able to get it at depositions.
8  And even if I were able to extract some memory, I have no
9  documents to be able to corroborate and challenge their witness
10 and make the record for the jurisdictional defense that the
11 Court must consider.
12         So in a nutshell that's our request, Your Honor.  We
13 believe that at least with respect to the exhibits there should
14 be no dispute that those should be produced and produced in a
15 way that's identifiable as to what they were with respect to
16 the disclosure statement.  The actual statement itself, we
17 would argue that to the extent Your Honor requires an in-camera
18 review that is the proper course here and hopefully the volume
19 of the statement that pertains just to Roxane would be short
20 and not unduly cumbersome to the Court.
21         THE COURT:  All right.  Why shouldn't I grant this
22 motion?
23         MS. SMITH:  Your Honor, there are two kinds of work
24 product involved.  Both have been recognized by every court as,
25 or virtually every court as being present in this kind of

9

1  analysis.  There's opinion or there's thought process work
2  product and factual work product.  Relator and the United
3  States have argued these are inextricably intertwined in the
4  document and the selection of what to attach to the document
5  which was done by relator's counsel, and I'll let Ms. Pollack
6  address that, but the Court doesn't have to reach that because
7  in either case assuming there's pure factual work product
8  that's segregable, there is still a Rule 26(b)(3) requirement
9  that defendants show a substantial need for it and undue
10 hardship if they can't get it in this way.
11         The fact is that they can't show that because, first,
12 everything has been produced to them.  All the factual work
13 product, the exhibits, have been turned over.  Now what
14 defendants say is but we need to be able to develop a defense
15 that the relator was not the original source for this so we
16 need to be able to know what the relator knew and when.  The
17 problem there is that the cases dealing with this are in the
18 context where there has been a public disclosure.  Defendants
19 here haven't pointed to a public disclosure.  And the fact is
20 they don't need discovery to find the public disclosure because
21 it's public.  That part is not, they don't require the
22 discovery from the relator in order to obtain.
23         They have mentioned here other complaints that have
24 been filed under seal.  They have mentioned the OIG reports
25 which may talk about the fact that published average wholesale

*MARYANN V. YOUNG*
**Certified Court Transcriber**
(508) 384-2003

10

1   prices were not accurate, but they didn't talk about specific

2   defendant fraudulently inflating their prices in order to

3   market the spread and work it with the Medicare and Medicaid

4   reimbursement system so that their customers would reap higher

5   profits.

6           There are at least three cases that talk about what

7   you need to show to show that this is a public disclosure of

8   the allegations in this complaint.  One is in this district.

9   There is *USX Rail Springfield Terminal Railway Company* 14 Fed.

10  3d 645, and also a district court case one of the AWP cases,

11  *USX Rail West v. Ortho McNeil Pharmaceuticals*.  There is a

12  calculation there that was first articulated in *Springfield*

13  *Terminal* in which Judge Saris adopted in the *Ortho McNeil* case

14  that says, all right, if it's a public disclosure of fraud you

15  need to have – there are basically three components.  The set

16  of facts that are fraudulent, the set of facts that are true

17  and how those add up, they call that X and Y, how those add up

18  to Z, the fraud itself.  And if just one of those things is out

19  there, the set of facts that are true or the set of facts that

20  are false and a relator brings another element there so that

21  you get the whole equation, then the relator is an original

22  source.

23          Defendant, Roxane here has not shown, the Roxane

24  defendants, plural, have not shown or pointed to anything that

25  was out in the public record that said Roxane intentionally

1   inflated prices on these particular drugs during this period
2   of time for this purpose.  All they have pointed to is OIG
3   reports that say we looked at the published AWP's, the reported
4   prices from the pharmaceutical companies and we're coming to
5   the conclusion and more specific as time went on as to their
6   reliability, their accuracy.  They were not talking
7   specifically about the NDC's at issue in this litigation.  They
8   weren't talking about specific companies.  And so without a
9   public disclosure any decision on what, whether Roxane needs to
10  know what exhibits were attached to the statement given to the
11  United States is at best premature, and I think that would
12  accord with the decision that Your Honor made in the Abbott
13  case when Abbott looked for the disclosure statement and the
14  Court denied it at this time.  There just hasn't been enough of
15  a showing under Rule 26(b)(3) of undue hardship or substantial
16  hardship and unfair disadvantage if Roxane doesn't have that at
17  this point.
18          THE COURT:  I'll give you – Ms. Pollack, do you want
19  to be heard?
20          MS. POLLACK:  Thank you, Your Honor, just very
21  briefly.  I'd like to make the point that this was all prepared
22  in anticipation of litigation.  It is clearly work product.  We
23  cite the *Marcmedco Dresser* (ph) case.  I think as co-counsel
24  has said in the cases Roxane relies on there was a specific
25  acknowledged public disclosure.  That was true in *Rockwell*.  It

1  was true in *Sacoa (ph)*.

2        In terms of an in-camera inspections, it's not as
3  simply as the defendants would make it out.  First of all,
4  these complaints cover many defendants.  Some of them are still
5  under seal.  There's claims in the case as it went along and in
6  the amendments that are no longer in the complaint that's
7  before this Court.  So there's all kinds of stuff in there that
8  quite frankly nobody cares about at this point.  And I would
9  agree that at best if they had a position it's highly
10 premature.  Thank you.

11       THE COURT:  Do you want to respond?

12       MR. GORTNER:  Yes, Your Honor.  First, with respect
13 to the Rule 26(b)(3) analysis it is not the case and the case
14 law does not instruct that that analysis needs to be done for
15 both the exhibits that are attached to the disclosure statement
16 and the disclosure statement itself.  Plaintiffs have not cited
17 a single case, and I'll represent to the Court I have yet to
18 find a case that has held that the exhibits are protected
19 attorney product.  And the plaintiffs concede the exhibits are
20 not privileged, that they have produced them in other context.
21 The plaintiffs best case is a central district of California
22 called *TRW Bagley*.  Even in that case which is their best case
23 the court flat out states that the exhibits of course are
24 discoverable.  So this notion that there needs to be a Rule
25 26(b) analysis of undue hardship with respect to the exhibits

1   is just incorrect, Your Honor.

2          Now with respect to the written disclosure discovery
3   and the in-camera inspection, this concept that we must prove a
4   public disclosure before being able to get discovery on
5   original source I think is also correct, Your Honor.  Counsel
6   here are going to the merits, the merits of our defense, but I
7   have yet to find a case that has said that you must prove your
8   affirmative defense before you get discovery as to the defense.
9   The issue under Rule 26, the broad parameters of discovery, is
10  if you have a colorable defense that you've articulated you're
11  allowed to get discovery on that.  And all the cases that
12  plaintiff cite in their brief, Your Honor, simply discuss the
13  merits at the end of the road and what you have to show.  This
14  is a discovery motion, Your Honor.  It's not a jurisdictional
15  evidentiary motion or a motion for partial summary judgment.
16  And even Judge Saris in her decision in *West* recently indicated
17  that the court's inquiry into the subject matter jurisdiction
18  is an ongoing one and that a later demonstration after
19  discovery.

20         Now we cited other cases in our reply brief which we
21  found last week where we indicated the proper inquiry for this
22  is after you've had discovery the court then makes based on a
23  complete factual record the determination of has there been a
24  public disclosure and if so, has there been, does the relator
25  have direct independent knowledge.  There is no affirmative

14

1  burden for us to prove to the Court at this point a public
2  disclosure to be able to get discovery, which by the way it's a
3  minimal burden that we're asking here.  It's essentially we're
4  asking them to give us, identify documents that they've already
5  produced as exhibits where there's no privilege and at worst to
6  present a redacted version or to seek a redacted version of the
7  disclosure statement just for allegations that go to Roxane.
8  We're not asking for anything as to other defendants.  So I
9  submit to you the case laws incorrect.
10            One additional point, Your Honor, this isn't just a
11 false claims act case.  The government and the relator have
12 also pled common law fraud.  The issue of the public disclosure
13 has no bearing in a common law fraud claim and certainly with
14 respect to proving justifiable reliance and government
15 knowledge these documents would go to the issue of the fraud
16 count as well.
17            The last point, with respect to the Abbott hearing,
18 Your Honor, Abbott never raised the issue of original source.
19 When you look at the briefing that came before the Court and
20 the brief colloquy that went on during the motion because as
21 Your Honor might recall Abbott raised this in the context of
22 omnibus motion that had I think five or eight other discovery
23 disputes going on so it was briefly touched upon, but Abbott's
24 arguments were different than ours.  They did not raise the
25 original source issue.  They, at least in their briefs were

1   seeking everything including attorney opinion product.  And
2   when I read the colloquy from the government's counsel at that
3   hearing, it appeared to be that that agreed with our position
4   which was that you are entitled to get the facts.  What wasn't
5   clear from that hearing or from the papers was that their
6   position on the facts was we're going to shuffle all the papers
7   within thousands of other documents and good luck finding the
8   facts within that stack of documents.  I don't think that's
9   supported by the case law and I certainly don't think that was
10  raised in the context of the Abbott case, Your Honor.
11          THE COURT:  Okay.  I'll take it under advisement.  I
12  don't intend to write an opinion.  I'll give you a margin order
13  fairly shortly.  All right?
14          MR. GORTNER:  Thank you, Your Honor.
15          MS. SMITH:  Thank you, Your Honor.
16          THE COURT:  All right.  We stand in recess.
17  //
18  //
19  //
20  //
21  //
22  //
23  //
24  //
25  //

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**(508) 384-2003**

16

1  CERTIFICATION

2     I, Maryann V. Young, court approved transcriber, certify

3  that the foregoing is a correct transcript from the official

4  digital sound recording of the proceedings in the

5  above-entitled matter.

6

7  /s/ Maryann V. Young                         October 2, 2008

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

***MARYANN V. YOUNG***
**Certified Court Transcriber**
**(508) 384-2003**